1813 65 May it please the court, my name is Howard Pincus from the Federal Public Defender and I represent Catherine O'Neal. As the District Court and the government agree, Agent Larkin Larko obtained statements from Ms. O'Neal in violation of Miranda. The government used one of these statements as proof that Ms. O'Neal gave a false account that went directly to the knowledge element of the export count, the sole disputed element of that charge. Because this constitutional error was not harmless beyond a reasonable doubt, this court should vacate Ms. O'Neal's conviction and remand for a new trial. The statement involved when Ms. O'Neal said Sergeant Larko told her at the base at Fort Carson that he told her that she needed to take guns to the Dominican Republic, all she needed was a concealed carry permit and to declare the guns to the airlines. The government had Sergeant Lane deny that he said this. In this way, the government used the unconstitutionally obtained statement to show that Ms. O'Neal gave a false statement about what she thought she needed to take that it was unlawful to take guns out of the country as she did. Couldn't they infer that from the testimony about the Canadian encounter anyway? The Canadian encounter certainly could have been relevant to whether Ms. O'Neal had knowledge of the illegality of export. There were good reasons for the jury to doubt that. It occurred 13 years before. The Border Patrol agents claimed they had independent recall of it. They claimed that the obligation was found in the ATF rules. There was no evidence that was true. In fact, the court's instructions were the State Department regulated taking guns and exporting guns. The jury knew from the ATF forms that were admitted on the acquitted accounts that the ATF is part of justice and not part of the State Department. As well, the government didn't argue that to the jury at all, and they didn't argue it even though the district court cited that testimony at page 1219 of Volume 5 in denying the Rule 29 motion. So the government evidently didn't believe the evidence was that strong. Of course, we're talking here only of harmlessness and not whether that evidence is relevant. It's certainly relevant, but the question here is whether the admitted proof, the lawfully admitted proof, was so overwhelming that the improperly admitted proof was insignificant by comparison. That was evidence that went something 13 years ago. This was evidence of a false story in connection with the very incident that the government was prosecuting Ms. O'Neill for. It was a big factor and one the government stressed in its argument to the jury. It asked the jury to look to Ms. O'Neill's state of mind, and it then cited the fact that she had lied to Agent Larko when she said that Sergeant Lane told her all she needed to take the guns out of the country was a concealed carry permit and to declare the guns to the airlines. Wasn't there also evidence that she had told several different stories, that she was a sharpshooter and was going to a competition, that she was going to give them to her family to protect them when they were building her house? There were a lot of things that she said that were not true. Well, we don't know they're not true. She did say she needed guns at different times. She wasn't a sharpshooter. We're sure that wasn't true. We don't know that. We know that Sergeant Lane didn't know anything about her being a competitive shooter and other people didn't know that. That doesn't mean she wasn't a competitive shooter. I'm not trying to talk over you, but I think what Judge Kelly is getting at is she told a whole bunch of different explanations for why she had guns in the Dominican Republic. Maybe all those were true, but they were all completely different. But multiple ones can be true at the same time, and more importantly, most of the statements that the government relies on were ones that went to her acquisition of the guns, when she had no obligation to say anything, and when the jury acquitted her of all of those counts. She was acquitted of 16 of the 17 counts that were submitted to the jury. So the notion that her differing stories affected anything... ...according to these lies. What's at issue here is not what she was going to do with the guns in the Dominican Republic. The issue for the jury was, did she unlawfully take them out of the country? It had nothing to do with why she was taking them into the Dominican Republic. That's Dominican law. What was at issue on the export count is, did she have knowledge, and there was no direct proof of knowledge, so could the jury properly infer knowledge that she knew that she needed a license, that she knew she needed something more than just declaring the guns to the airline? Isn't the telling of multiple stories evidence that she knew she was violating the law? There's no multiple stories on taking the guns out of the country at all. The government points to multiple stories in terms of things she said in acquiring the guns and things like that. The jury acquitted her of all of those counts. So the notion that the differing stories, if you want to call them that, affected the jury's verdict, or would have led her to convict on this count, is belied by the fact that the jury acquitted her of everything else. Well, but that's what I'm not following, because if those counts did not relate to these stories about why she was going back and forth into the Dominican Republic and out of the Dominican Republic with these guns, I mean, for example, she was saying, well, I'm going to retire in the Dominican Republic, and for my family's security, I want to have all of these guns. Even if you put this testimony, improperly elicited, with Sergeant Lane, or to Agent Lane, she's going to still be thinking, well, she was up to something with those guns because she told all these diametrically different stories. There's nothing diametrically different. She said she brought them for her family to protect a house that she was building. There's no evidence that those are false. But even if they were, that relates to the Dominican, potential Dominican charges. What's at issue here is, what did she need to take the guns out of the United States? Her whole defense was undermined by Agent Larco's statement, that he recounted her statement, and Sergeant Lane's denial of it. Her whole defense was, I was acting in an aboveboard way. I declared these to the airlines. There's no dispute about that. There's a stipulation at volume one, pages 516 to 517. There's Agent Cosgrove's, or Mr. Cosgrove's testimony, and the government doesn't dispute, that she declared these guns to Delta Airlines. Her defense was, I was doing what, I was acting in a way that's inconsistent with me believing that something more was required to take these guns out of the country. This evidence of a false story directly relating to the export, the taking of the guns out of the country, directly undermined that defense. It was important evidence, and the government's summation shows that to be the case. If it wasn't as that important, that wouldn't be what they relied on almost exclusively, or to a very large degree, in arguing that she had guilty knowledge in taking the guns out of the country. And in fact, what the other stuff that they pointed to was very weak. They talked about, in addition to the Port Huron agents that we've already discussed, the fact that guns are regulated in this country, and she knows that she needed to fill out ATF forms to buy a gun, she knew she needed a concealed carry permit to carry a concealed weapon. Those are all about what's regulated within the country. It doesn't go at all to knowledge that she would know that something more, beyond declaring that she was taking the guns out of the country, was needed to take guns out of the country. They pointed also to the Delta website, but that website says nothing about taking guns out of the country, even though it's the website of an American-based carrier. And it has a reference in there to, of course, says that travelers are responsible for complying with local, state, and federal law, and it directs the visitor to the website, to the government presented no evidence about what was on the TSA website. So that's no basis for inferring her knowledge that something more than what she did was required to take the guns out of the country. And the last thing the government relied on were the ATF forms. And all they say is the state of commerce may require a license to export guns from the country. It doesn't say that a license is ordinarily needed. It doesn't defy what export is. Export is typically thought of to refer to commercial activity. Ms. O'Neill would not be unnoticed that there was a high probability that a license was needed to take guns out of the country for her personal use. The evidence that the government unconstitutionally admitted into this case was critical to the jury's determination. At the very least, the other evidence cannot be said to be so overwhelming that this improperly admitted evidence was insignificant by comparison. Can I ask you about that very point? This is the second time you refer to the standard, and I think correctly, but is the articulation of the standard that you said that the evidence is so overwhelming that in comparison to the improperly elicited testimony that it wouldn't have made a difference? Do we essentially determine harmlessness by putting aside the improperly elicited testimony with regard to the statement to Agent Larco, and then determine, based on the other evidence, is that evidence of such a caliber that she was guilty beyond a reasonable doubt, that we essentially determine, putting aside that improper testimony, was she guilty beyond a reasonable doubt? Is that what we do, or do we do something different? No, that would be nothing more really than a sufficiency determination. Well, sufficiency is determining if the evidence viewed in the light was favorable to the government, whether that would have supported a conviction. It obviously would not be a sufficiency question. It would just be whether or not we look at that evidence, much like we would in a habeas case with Schlutt v. Dello. Do we determine that she's guilty, not viewing the evidence favorably to the government, but just looking at it, what do we think? Well, you would have to think that the evidence was so strong that the jury would have to have convicted, notwithstanding the admission of improper evidence. And here, that evidence was much stronger than what the government actually relied on. So I don't think that determination could be made that the other evidence was so strong that this evidence is just insignificant when you compare the two. I think you need to make that comparison, as this court said in Glass, as the government agrees is the correct standard. And this evidence here is far from airtight. We're not challenging the sufficiency of the evidence, but that doesn't mean that that was the only conclusion the jury could have reached. And it certainly was not, and this evidence went directly to the knowledge element. And there's no way this court can say that it's harmless beyond a reasonable doubt, especially given the jury's acquittal on the other 16 counts here. So we would ask this court to vacate Ms. O'Neill's conviction and remand for a new trial without the improperly, the unconstitutionally obtained evidence. Let me ask you a couple of things real fast. So... I'm sorry? And Judge Bracarak's going to give you a solid here and give you some more time. So without the statement that you're complaining about in this case, do you think the evidence was sufficient to support a conviction? Absent this statement, would you have a sufficiency argument? Well, we didn't raise the sufficiency argument. No, I know. I'm digging into your theory a little bit. So take the improperly obtained statement out. Do you think that it's sufficient? The jury could have convicted based on all the other evidence by inferring knowledge that she was on deliberate ignorance theory, but that's a far cry from saying that that was the only conclusion that could reach her, that it had to reach that conclusion. The evidence was sufficient without... And so the nature of your argument, just drilling down, is that this statement was so strong, this testimony was so strong from the guys, from her supervisor saying she never asked about that, that was a lie, that it affected the outcome. Yes, it's from her own mouth. It went directly to the export count. It undermined her defense and the government stressed it to the jury. And given all of that, it can't be considered harmless beyond a reasonable doubt. Okay. Thank you, Mr. Biggis. Mr. Farley? Good morning, Mr. Biggis. May it please the court. Paul Farley for the United States. The defendant's argument in this case springs from a single exchange in Special Agent Larco's testimony at trial. And as the district court found, whatever inference the jury drew from comparing Lane's and Larco's testimony was insignificant compared to what the jury learned from other government witnesses. Speak into the microphone, please. Sorry. Somehow I managed, after a week of sunny days, to get a cold. I don't know how that happens. Let's zero in on kind of the most significant, what I think is the most significant evidence, which is the court here on Customs and Border Protection. At this, the defendant was refused entry in Canada. And Canadian officials said, you can't bring these firearms in here without a permit. The defendant is returned to the American side of the border where Officer Wilbur told her that there are certain requirements that should have been followed to have exported a firearm from the United States and that criminal prosecution and fines could result. And he cautioned her that she kind of got lucky today that it was handled this way. And he, in terms of credibility, he remembered this because this incident led to a change in procedure at the border. So that's why this stuck out with him. And I would say, just on my own part, I've traveled a bit. If I had ever been refused entry to any other country, and maybe particularly Canada, and told that this could have resulted in criminal prosecution, that would have stuck with me. I'd stick with you if Officer Aja Wilbur said, because the ATF has restrictions on this, and of course, you're a lawyer, and presumably Ms. O'Neill is not a lawyer, but she might very well have, particularly against the prism of the harmless beyond a reasonable doubt standard under Chapman, she might very well have gone home and thought, oh, I'm going to need to look this up at the ATF. Maybe I even called up a lawyer like Howard Pinkett and find out whether ATF restricts me. Might have called the State Department, might have called the ATF, might have done something. But if she had checked ATF, she would have come up blank. I don't know if that's the case, Your Honor, because the ATF regs actually contain these forms. And so if you go to 27 CFR 479, you find Forms 6 and 4 and 9, which are the import and export forms. So... Did you argue that in your red brief? Did not. Did not. But what I am arguing is that, to summarize the defense on this point, is nobody told me. You know, I filled out these forms, 15-odd arms purchases just prior to going to the VA. Hey, there may be other requirements. I was rebuffed at the Canadian border and told by border officials, this is, you know, this is potentially a criminal prosecution. And the answer, the argument is, nobody told me. Nobody gave it to me on a platter that here are the requirements you have to do. And the jury instruction in this case is very clear. And I... Sorry. This is at Volume 1, page 605. Knowledge can be inferred if the defendant deliberately blinded herself to the existence of the fact. If you don't lift a finger when it's already been brought to your attention time and again, that's deliberate blindness. There was no objection to that? There was... No, there was no objection to that. So that... So you can infer it, right? I mean, that's what you just read. So you can infer it. And so there's certainly sufficient evidence that she would be convicted. But saying this constitutional error was harmless beyond a reasonable doubt, we know that in comparison to the improperly elicited testimony that she would have been convicted, found guilty beyond a reasonable doubt. What about the satisfaction of that standard that you can infer guilty knowledge, you know, from, or knowledge, you know, from deliberate blindness? What about that makes it so overwhelming that we know that the jury would have convicted her otherwise? Well, I think, again, the Port Huron situation, I think, is remarkable. I think... I can remember border crossings 40 years ago. That was where something happened, you know. And to say... And the other officer, Officer Fletcher, and this is volume 5, page 1080, said he asked her if she had the proper paperwork to export a firearm, and she said no. And he reminded her of the signs and explained she was required to file the ATF form, etc. So she's been warned point blank by two officers. And I would say Officer Fletcher refreshed his recollection from his contemporaneous report of the incident. So this is not a case where he's kind of thinking back 13 years, I think this happened. He actually refreshed his recollection. So I think that alone puts somebody on notice, that they need to take an additional step. Now, when you get into the different stories that are told to gun dealers, different stories that are told to Dominican officials, actually in a course of a 24-hour period, she says, well, I'm a collector, and the one officer said, we discounted that because collectors don't import all the same kind of firearms. She told somebody else that she was going to start a business. She told them that it was for her personal protection. And this whole story about, well, actually, I shoot competitively. And it's not just the sergeant that she worked with day in, day out. The sergeant that was her supervisor had never heard of her shooting competitively. And that's the same sergeant, Sergeant Lewis, that she lied to when she was taking the firearms, where she said, I need a pass because I'm going to New York. And in fact, she was going to New York to change planes to go to the Dominican Republic and concealed that from him. So I think there are... With regard to that statement of Sergeant Lane, there's also testimony that they had a strictly professional relationship. And so maybe a fact finder could infer that, well, that he was the guy on the base that knew all about guns. But I don't think there was any testimony that he was the guy that knew all about exporting and importing guns. And you have the testimony that they had a strictly professional relationship. Can't you reasonably infer that she wouldn't have necessarily talked about it? I think it's a fair reference that she might not have mentioned anything to him. I think at the point where she's planning on taking a load of guns out of the country and she tells her supervisor, I'm just going to New York, I think there's a strong inference that can be taken from that. And we can talk about the Delta Airlines and all that, and I think that's a fairly thin sort of thing. But the point is, we have an individual, in addition to having what, which to me would be a traumatic experience at the Canadian border, has been told time and again recently, there are other requirements, you ought to look into them. And the response is, hey, nobody told me what those requirements were. It seems remarkable that they wouldn't make the least effort to make a phone call or do a web search or anything like that. I'm sorry? That's negligence, isn't it? She was on notice, under the Delta Airlines website, that there was a reason to inquire, certainly the confrontation at the Canadian border. But you've got a much more onerous burden than negligence. You have to convince the court that in comparison to the improperly listed testimony, that's other evidence of guilty knowledge of what the exporting legal requirements were. And so even if she was deliberately blind to the requirements and should have inquired further and maybe the fact finder should have or could have drawn that inference, it seems to me that the flip side of that is, well, you know, the Delta Airlines said look at the TSA website and you don't have any evidence about the TSA website. The Canadian agent said, you know, ATF said this and ATF, there's no evidence that was presented to us in argument on horribleness that ATF said anything about it. So how do you confront that? I don't think, this is much more than negligence. Negligence is the first time at the Canadian border. Gee, I had no idea. After that, we're into the business of recklessness or as the jury instruction contemplates, deliberately blinding oneself. You are on notice. And when you sign these forms and the forms advise you, hey, if you're going to export this there may be other requirements, you're on notice. That's not negligence. And so if we're here in a situation where this was truly a first time, you know, situation, we might be on a different footing. Do you agree that with respect to the encounter with the Canadian agents, that what they told her was not entirely accurate? Not entirely accurate. I would say this much is accurate. Okay, hold on. You do agree with that, that it's not entirely accurate? It's not 100% accurate because he said form six and he meant form nine. Form six is the import form, form nine is the export. Everything else she was told was accurate. You know, that there are requirements you have to follow to export firearms in the United States. Criminal prosecution and fines can result. That the other officer said you have paperwork you need to export a firearm and that she had to require an ATF form to export the form. The only thing they got wrong is the number of the form. Okay? Okay. Because I thought I heard Mr. Pincus say that he thought there were maybe some additional inaccuracies. I'll give him a chance to tell us about that in a second. There was not a lot of cross-examination. There was not an attempt to controvert the testimony of those officers. That sort of just passed by. If we put aside what you told us a few moments ago about the ATF restrictions and we restrict our consideration of your harmlessness argument to the red brief, Agent Wilbur did say that it was ATF that created this prohibition against taking arms to Canada. And there's nothing in the red brief that refers us to any evidence saying that ATF has any restrictions on taking arms to Canada. Correct? I don't know that it's just a Form 6 versus Form 9. That's not in the brief. What you have is the uncontroverted testimony of which the jury heard of this agent saying you need to have this ATF form if you're going to export. All right? And that turns out to be irrelevant to what she was ultimately charged with. It wasn't that she didn't have this ATF form, correct? That's correct. That's correct. But again, the standard that we're looking at here is not that she had actual knowledge of the actual requirements and she knowingly violated. So I think we can talk about the changing stories, but I think the court seems well-versed in all that. I guess what my curiosity about the inaccurate information was is if you assume the information at the border was inaccurate, at the Canadian border, and that somehow that put her on notice that she was supposed to go look it up, is there any evidence that she didn't try to go look it up? I mean, I guess that never came in. She didn't testify. Yeah. She didn't testify. There wasn't, and I'm not sure how the government would have proven that she never could go to the website. Probably couldn't have. Yeah. Right? I did want to just, and I have a couple of minutes here, there was a question about how to review this and how it's distinguished from sufficiency. And to me it seems it's this much. When we're on a sufficiency review, you're construing the record in the favor, in a case like this it would be in favor of the government below trying to, the review of the evidence on a harmlessness is de novo. So you're still looking at the same evidence, but you're not kind of giving that weight to the decision below. So I think it's difficult, even under this kind of review, to try and get into the jury's head and saying, well, what about this? What about this? So you're looking at the record de novo, not giving the kind of additional weight that you would on a sufficiency. But otherwise, you have the record before you and you can make a determination whether a jury would have convicted on that. So what if we think that some jurors would have convicted and some wouldn't have? Is it harmless or not? I don't know how the court would go about parsing individual jurors on this, but obviously if the jury as a whole wouldn't have convicted, then you would vacate the conviction. But I don't know how one would go about doing that. I mean, whenever you're looking at a jury verdict, you know there are 12 minds at work and you're looking at the collective work product, right? So is there anything further? I saved my voice for the next one. All right. Thank you. Thank you, Mr. Farley. Mr. Prigg? Well, just picking up on that harmlessness versus sufficiency, what the harmlessness inquiry here allows us to do is say not just that the jury would have had to credit the Border Patrol agent's testimony, but what were the weaknesses in it? One of the weaknesses 13 years ago, not just they remember an incident, but they remember what they said to her. The jury could have doubted that. The jury could have doubted the fact that they referred to an ATF form and there's no evidence and it was the government's burden to show that there was—the jury would, without government proof, have assumed that the agents were mistaken. So they could have doubted their entire testimony. And if the government wants to put on proof at a retrial about the ATF regulations, they're free to. But the jury here did not have that. And the government talked about what was remarkable and how remarkable the Border Patrol agent's testimony was. What's remarkable is that the government didn't make any mention of it in its summation, even though the court specifically invoked it in denying the Rule 29 motion. So the government at trial— You're not suggesting that remarks not made constitute some type of evidence. Not that it's evidence, but it certainly shows what the government thought of that proof at trial. And here they are arguing that that is the reason why you can safely determine that the constitutional error here was harmless beyond a reasonable doubt. So again, we'd ask the court to vacate Ms. O'Neill's conviction and remand for a new trial without the unconstitutionally obtained statements.  Thank you, counsel. This matter will be submitted. As in the other cases, I thought the efficacy in the—written in oral presentations was excellent. We'll take a 10-minute break, and when we resume, we'll hear the United—for 10 minutes, and we'll hear United States v. Lovato, 18-1468.